No. 29,987.

The Derby Oil Company, *Appellant*, v. The City of Oxford et al., *Appellees*.

(4 P. 2d 435.)

Opinion filed November 7, 1931.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita, for the appellant.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair* and *W. A. Kahrs,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Smith, J.: This is an action to enjoin the city of Oxford from further prosecuting certain cases which had been appealed from the police court of that city to the district court of Sumner county. Judgment was for defendant. Plaintiff appeals.

Oil was discovered under the townsite of Oxford. The city passed an ordinance under which it undertook to regulate the drilling of oil wells within the city limits. Several oil companies had leases on different parcels of land in Oxford. Two of these decided to test the validity of this ordinance in court. One brought an action in the federal court to enjoin the enforcement of the ordinance. The other sought the same relief in the state courts. In the meantime both of these companies went ahead and drilled under the protection

of an order enjoining the city officials from molesting them. When the ordinance was finally held valid the court provided in the order that these companies should not be prosecuted for the drilling that had béen done while the ordinance was being tested.

Appellants did not bring any action to test the validity of the ordinance. It is claimed and the court found that when the time came, and this company wanted to drill, a representative of the company talked to the mayor of the city about bringing an injunction suit. It is claimed that the mayor told the company that it would not be necessary for it to get an injunction; that this would require the city to go to the expense and trouble of hiring a lawyer to look after it, and that the company should go ahead and drill and it would not be prosecuted for drilling while the validity of the ordinance was being tested. This conversation with the mayor occurred in November, 1927. There is a sharp dispute on this point, but the court found that the mayor did make statements and promises as claimed.

The company did go ahead and drill. Three different wells were put down on the lease in question. The operations extended over a period of two years. After the ordinance was finally held valid and a writ of certiorari was denied by the supreme court of the United States, appellant ceased its drilling operations. Soon thereafter a prosecution was begun against it in three separate complaints charging violation of the ordinance. There were about 2,000 counts charged. At the trial before the police judge the company pleaded not guilty. The facts were agreed to. The police judge found the company guilty and assessed a fine of $100 on each count, or approximately $200,000. The company appealed to the district court and while the appeals were pending brought this suit to enjoin the city from further prosecuting these cases. Facts were alleged about as detailed here. The court found that the statements alleged in the petition to have been made by the mayor had been made by him. It further found that the company had not been guilty of laches and that the application for temporary injunction should be denied. From this ruling the company is prosecuting this appeal.

Appellant seeks to bring this case under the rule announced in *Ex Parte Young*, 209 U. S. 123, 146, 52 L. Ed. 714, where it was said, quoting from *Cotting v. K. C. Stock Yards Co.*, 183 U. S. 79, 100:

" 'But when the legislature, in an effort to prevent any inquiry of the validity of a particular statute, so burdens any challenge thereof in the courts that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of the equal protection of the laws.' "

"To penalize good-faith resistance to the enforcement of a law by judicial interference is unreasonable and indefensible from any point of view. It denies the equal protection of the laws; it violates the constitutional guaranty to every person of a certain remedy in the law for all injuries to persons and property, and violates every principle of civil liberty." (*Bonnett v. Vallier*, 136 Wis. 193, syl. ¶ 16; 12 C. J. 1289.)

If this company had brought a suit to test the validity of the ordinance and had then gone ahead and drilled, it could have availed itself of the rule announced in *City of Marysville v. Cities Service Co.*, 133 Kan. 692, 3 P. 2d 1060. There it was held that an injunction restraining the enforcement of a city ordinance, which is regulatory in its nature and the validity of which depends upon the existence of certain facts which can only be established through judicial inquiry, and such injunction suit is prosecuted promptly and in good faith, is a complete defense to a prosecution for the violation of the ordinance during the life of the injunction. In deciding that case this court followed many decisions of courts of last resort in the several states and the federal courts.

However, this was not done. The two questions then that must be answered are: Did the company have a right to rely on the promise of the mayor? and Can this suit be maintained while a prosecution for the offense is pending?

Appellant relied on the promise made by the mayor. It will be seen that all the officials of the city stood by and watched appellant violate the ordinance for two years without taking any steps toward a prosecution. The work on the wells being drilled by appellant was carried on in open view of all the officials and must have been known about by them. It has been held that conduct such as has been described here was sufficient to estop the city from enforcing the ordinance. (3 McQuillin on Municipal Corporations, 1185.) There it is said:

"The doctrine of estoppel *in pais* is applied to municipal, as well as to private, corporations and citizens, but the public will only be estopped when justice and right may so require."

In the case of *Martel v. City of East St. Louis*, 94 Ill. 67, it was held:

"The doctrine of estoppel *in pais* applies to municipal corporations, but

the public will only be estopped, or not, as justice and right may require. Any positive acts by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers have done, will work an estoppel."

The same theory and reasoning were followed in *Mayor, etc., of Athens v. The Georgia Railroad*, 72 Ga. 800. There is a strong analogy between that case and the case at bar. There the city had passed an ordinance forbidding the storage of guano within the city limits. The city officials then stood by and watched the railroad expend a large sum of money in building a warehouse for the storage of guano. The court held that on account of the city officials standing by, the city was estopped from prosecuting the railroad company for a violation of the ordinance. In this case it is well known that it costs a great deal of money to drill an oil well. The members of the city council knew this, yet they stood by and watched this money being expended without taking any steps to prosecute for a violation of the ordinance. This prosecution could have been instituted when appellant had drilled for one day on the first well, but such action was not taken. The cases of *Rose v. Mayor & C. C. of Balto.*, 51 Md. 256; *State, ex rel., v. McIlravy*, 105 Neb. 651, and *County of Randolph v. Post*, 93 U. S. 502, are persuasive on this point.

In *Municipal Power Transmission Co. v. City of Lyndon*, 127 Kan. 59, 272 Pac. 158, the city of Lyndon had entered into a contract with the city of Quenemo for the purchase of electric current, which contract was held to be unauthorized. The city of Lyndon, however, performed the contract for two years, and then undertook to repudiate it. This court held that the city of Lyndon was estopped to assert the invalidity of the contract, even though it was unauthorized, because it had accepted and paid for current thereunder. In the case at bar the city received the benefit of not being compelled to defend an additional case in court and stood by while the oil company operated under the promise of the mayor for about two years.

In all the above cases either the municipal officers stood by and watched the ordinance being violated and did nothing about prosecuting till a great deal of expense had been incurred by the person seeking to invoke estoppel, or some municipal officer approved the violation of the ordinance and this action was later ratified by the other officials by acquiescence. Here the mayor of the city had

advised this company to go ahead and drill, and promised that it would not be prosecuted. This was the businesslike action for the mayor to take. The city would not have been any better off had the drilling of these particular wells been done while a suit was being prosecuted with reference to them. We have seen by the Marysville case, *supra,* that the company could not have been prosecuted, even had there not been an order enjoining it issued by the court. Since the trial court has found that the mayor did give the promise that is claimed by appellant, and the members of the city council stood by for two years and let the ordinance be violated, thereby ratifying and approving the promise of the mayor, it would be manifestly unfair and inequitable to hold that failure to file a suit in view of the mayor's promise would make appellant liable to prosecution. Following the rule set out in the above authorities and in 10 R. C. L. 707, 21 C. J. 1190, *Webster v. School District,* 313 Ill. 54, we conclude that this is a case where justice and right require that it be held that when the mayor advised the company to go ahead and violate the ordinance while its validity was being tested, and the council stood by and acquiesced in the violation, the city council should not be permitted to stultify itself by subsequently prosecuting the company for a violation of the ordinance.

There then remains the question of the right of appellant to bring this suit to enjoin the prosecution of an action now pending. What we have already said establishes the fact that appellant is entitled to equitable relief. Since we have reached that conclusion such relief will not be denied merely because there is a criminal prosecution already pending. This being true, the case follows the rule laid down in *Brown v. City of Abilene,* 93 Kan. 737, 145 Pac. 561, where it was held that such an injunction suit may be maintained where the relief sought is only incidental to the protection of personal and property rights, and in *Foley v. Ham,* 102 Kan. 66, 169 Pac. 183, where the court, speaking through Mr. Justice Mason, very ably discusses a similar situation.

The judgment of the district court is reversed with directions to enter judgment for plaintiff.

HARVEY, J. (concurring specially): I concur in the judgment of reversal, but prefer to state my reasons briefly as follows: The rule of law announced in *City of Marysville v. Cities Service Oil Co.,* 133 Kan. 692, 3 P. 2d 1060, syllabus 6, is applicable to this

case. There are only two other important questions in it: First, whether injunction is the proper remedy. The general rule is that an action will not lie to enjoin the prosecution of a criminal case. But there are two well-recognized exceptions to this rule: (1) When there is a multiplicity of the criminal actions; (2) where property rights are involved. Both of these exceptions apply here.

Second, whether the parties here are bound by the decision of the federal court involving the validity of the ordinance. The city contends the plaintiff is bound by it, and that appears to be conceded. If so, there is no reason why the city should not be bound by it. By that decision the city was specifically enjoined from enforcing the penal provision of the ordinance for the period that its validity was in litigation, and for a reasonable time thereafter. (*Marrs v. City of Oxford*, 24 F. 2d 541. Affirmed, 32 F. 2d 134. Certiorari denied, 280 U. S. 463, 74 L. Ed. 617.)