No. 39,619

In the Matter of the Condemnation of Land for State Highway Purposes, EMMA GEBHART SIMMONS and McNAGHTEN LOAN COMPANY, INC., *Appellees*, v. STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(283 P. 2d 392)

Opinion filed May 7, 1955.

*Howard G. Engleman*, of Salina, argued the cause, and *W. B. Kirkpatrick*, Assistant Attorney General, and *Henry L. Daniels*, of Topeka, were with him on the briefs for the appellant.

*C. L. Clark*, of Salina, argued the cause, and *James P. Mize*, and *Thomas M. Lillard, Jr.*, both of Salina, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from a judgment in a condemnation

proceeding to condemn land for the widening and improvement of a public highway..

On August 11, 1953, the State Highway Commission instituted proceedings to condemn certain land, including all rights of access in and to such land as permitted by G. S. 1953 Supp. Chap. 68, Art. 19, located in Saline County, Kansas, which land was owned by Emma Gebhart Simmons and subject to a mortgage to McNaghten Loan Company, Inc., for the purpose of widening existing U. S. Highway 81 into a four-lane highway between the south city limits of Salina and the Smoky Hill Air Force Base, located south of that city. The same day the district court of Saline County determined that the petition was sufficient; that the commission had the power of eminent domain; and that the lands were necessary for state highway purposes. Thereafter appraisers were duly appointed and returned their appraisal, allowing $19,290.00 for the land taken and damages for that remaining.

Appeals were taken from the award of the appraisers by both the landowner and the commission, as authorized by G. S. 1953, Supp., 26-102. In district court the commission filed its verified statement of the sum of money estimated by it as condemnor to be just compensation for the land taken, including damages. Thereupon the landowner accepted such sum, which was $14,796.60, without prejudice to her right of appeal and this amount was paid her by the clerk of the district court.

In due time the cause was tried by a jury which returned its general verdict for the land taken and damages to the remainder in the amount of $29,300.00, and returned answers to special questions. Thereafter the commission filed its motions to set aside such findings and for a new trial and, when both motions were overruled, perfected this appeal.

Two adjacent tracts of land are involved in this proceeding. These, in the interest of clarity and to avoid confusion, will be referred to throughout this opinion, as they were in the court below, as the north and south tracts.

Prior to the condemnation the north tract consisted of 72.10 acres in the South Half (S½) of the Northwest Quarter (NW¼) of Section Twenty-five (25), Township Fourteen (14) South, Range Three (3) West, lying immediately south of the city limits of Salina. At the time of the condemnation it was unimproved farm land and had been so used for many years. Approximately 33 acres of the east

portion thereof was cut off from the remaining acreage by the Union Pacific Railroad tracks. As a consequence this portion of the tract was less suitable for possible future residential development than the west 35.26 acres.

The south tract, located in the Southwest Quarter (SW¼) of Section Twenty-five (25), Township Fourteen (14) South, Range Three (3) West, consisted of 156 acres and was located immediately adjacent to and south of the north tract. Located on the northwest corner of this tract, which was also being used for farming purposes, was a dwelling house, barn and other improvements.

Before the condemnation U. S. Highway 81, which ran north and south on the section line west of each of the two tracts, consisted of a single lane highway and the landowner had one regular roadway into the land from the west which was directly south of the farm house. However, it is conceded that at that time she had a common law right of access onto such highway at any point, subject to compliance with the lawful regulations pertaining to entrances promulgated by the commission.

In condemning land for the new roadway the commission took a strip of land of varying width, approximately 1190 feet long, amounting to 3.84 acres from the west side of the north tract, including all rights of access. It also took a strip of land one-half mile in length together with all rights of access from the west side of the south tract, except a 40-foot roadway leading into the house. Actually, in addition to taking the land described, this action resulted in the landowner losing the right to use approximately 3780 feet of access she had theretofore possessed along the highway, the north bound lane of which as now constructed marks the western boundary of her land. In addition the commission took an easement for borrow, amounting to 2.68 acres from the south tract, the title to which remained in the landowner.

Prior to the trial of the cause the ownership of the land, the acreage taken and the acreage remaining were all agreed to by stipulation, in substance as heretofore stated. Among other things, not previously mentioned, the stipulation provided (1) that the McNaghten Loan Company, Inc., as mortgagee, was to be bound by the judgment and verdict of the jury rendered in the cause when and if approved and confirmed by the court, and (2) that the Saline County Zoning Plan, which we note prohibited use of the involved land for commercial purposes and designated it as residential,

was in effect at the time of the condemnation. Such stipulation also contains provisions recognizing that Kraft Manor Addition and Kraft Manor Addition No. 2 are platted residential additions to the city of Salina. In this connection it should be here pointed out that under the uncontroverted evidence adduced at the trial it appears that these additions, carved out of lands previously owned by her lying directly north of the north tract here involved and consisting of 221 residential lots all but 6 of which had been sold at the time of the trial, were platted by Mrs. Simmons for residential purposes as a part of such city, the one first mentioned in 1950 and the second in 1952.

At the close of the trial, after giving full and complete instructions respecting the measure of recovery in highway condemnation proceedings involving controlled access facilities to which no objections were made by either party the trial court submitted the jury certain special questions to be answered along with its general verdict. Without quoting them at length it may be said the answers returned to these questions, which we pause to note a computation discloses conform with the general verdict, are: (1) That at the time of its appropriation for highway purposes the reasonable market value of the 3.84 acres of land taken from the north tract was $6,720; (2) that immediately prior to such appropriation the reasonable market value of the remaining 68.26 acres in that tract was $45,-000.00; (3) that after the appropriation of the 3.84 acres and control of access the reasonable market value of the remaining 68.26 acres in the north tract was $40,000.00; (4) that on the date of its appropriation the reasonable market value of the 2.58 acres taken from the south tract was $2,580.00; (5) that immediately prior to such appropriation the reasonable market value of the remaining 153.42 acres of the south tract, including improvements, was $66,-697.00; (6) that after the appropriation of the 2.58 acres and controlled access the reasonable market value of the remaining 153.42 acres of the south tract, including improvements was $51,697.00; and (7) that the best adaptable use or uses to which 153.42 acres of the south tract could be put immediately prior to the condemnation were agriculture and suburban.

What has been heretofore stated will suffice to supply the background necessary to give readers of this opinion a proper understanding of the contentions advanced by the commission as grounds for a reversal of the judgment rendered by the trial court after ap-

proving the answers to the special questions and the general verdict. These contentions will be considered and disposed of in the order in which they are presented and argued in its brief.

At the outset it may be stated there is no dispute between the parties regarding the measure of damages in a highway condemnation case such as is here involved. All of them concede the propriety of the trial court's general Instruction No. 5, dealing with that subject, which reads:

"You are instructed that where, for the purpose of widening and improving a public highway, a strip of land is taken from a tract and the owner's right of access from a public highway also is taken, the owner is entitled to compensation to the extent of the value of the land taken, and to compensation for injury to and depreciation, if any, of the remainder of the tract resulting from the appropriation of the land and rights of access in question."

The first and probably the most important claim of error relied upon by appellant, of a certainty the one to which it devotes the greater portion of its brief and argument, is that the trial court erred in refusing to sustain its motion to strike out portions of the testimony of certain of appellees' expert witnesses regarding the reasonable market value of the land taken from both the north and south tracts after it appeared that, at least in part, those witnesses were basing their valuations thereof upon what it contends were improper elements of damages, namely, that the land fronting the highway prior to the condemnation had substantially higher value than the land immediately to the east of it.

In support of its position on this point appellant directs our attention to *Russell v. State Highway Comm.*, 147 Kan. 297, 77 P. 2d 199, and insists it compels the conclusion the superior value of frontage ground as compared to the value of other ground left in the same tract is not a proper element of damages in a highway condemnation proceeding such as is here involved. We do not agree. Where—as here—it is conceded the State Highway Commission is proceeding under provisions of the controlled access facilities statute (G. S. 1953 Supp. Chap. 68, Art. 19) with the avowed purpose of condemning the frontage portion of a tract of land possessing highway access rights without restoring those rights to the land remaining in the tract we believe the rule announced in the case last cited, where the land involved was deprived of no access rights whatsoever, has no application and it must be held the frontage land taken is worth more per acre than the remaining adjacent

land without those rights. We agree with appellant that under the existing law, and the court's instructions, the value of the land taken must be its value at the time of its appropriation. Indeed that is one of the impelling reasons for the foregoing conclusion. It necessarily follows evidence of the character of which appellant complains tended to establish one of the elements of damages subject to consideration in determining the value of the land taken from the two tracts in question and the trial court did not err in denying appellant's motion to strike such evidence from the record or in refusing to instruct the jury to disregard it.

The conclusion just announced does away with any necessity for discussion of arguments advanced by appellant, predicated on its theory of inadmissibility of the foregoing evidence, to the effect the jury arrived at the value of the land taken by an improper and erroneous method. By the same token, since the testimony of appellees' witnesses was ample to sustain the jury's findings that at the time of its appropriation for highway purposes the reasonable market value of the 3.84 acres taken from the north tract was $6,720.00 and the 2.58 acres taken from the south tract was $2,580.00, and especially since the testimony of one of appellant's own witnesses was practically in accord with such findings, there is no occasion to discuss other arguments advanced by it to the effect the value placed by the jury on either of such tracts was excessive, unfair, or based on passion and prejudice.

It is next contended the trial court erred in refusing to give certain special questions requested by the appellant. The first of these sought to inquire of the jury whether the 68.26 acres remaining in the north tract was substantially as desirable for residential development after the 3.84 acres had been appropriated as it was before. We think there are several reasons why the trial court did not err in refusing to submit this question. In the first place the information sought to be elicited by such question had been substantially developed by preceding questions submitted by the court and to that extent was repetitious. In the next if such question had been submitted the answer thereto, whether in the affirmative or in the negative, would not have affected the verdict or disclosed any sound reason for upsetting it. Under all the circumstances, while we do not believe it would have been error to submit this question, we have little difficulty in concluding the trial court committed no prejudicial error in refusing to do so.

Appellant concedes the remaining special questions requested and denied were requested with the view and purpose of ascertaining whether the jury's answers to other submitted interrogatories were based upon evidence relating to what it was then contending was an improper element of damages, i. e., whether in valuing the two tracts appropriated the jury placed a greater value per acre on such tracts than it did on the land adjacent thereto on the east. As we have seen the evidence in question was proper. Under such circumstances it cannot be successfully argued the trial court's action in refusing to submit such questions was erroneous.

Finally appellant contends the jury's verdict is grossly excessive as to damages allowed for injury to and depreciation of the land remaining in both the north and south tracts, resulting from the appropriation of the land and rights of access. This allowance, as will be disclosed upon resort to answers to special interrogatories heretofore mentioned, was $5,000.00 for the remaining 68.26 acres in the north tract; and $15,000,00 for the 153.42 acres remaining in the south tract which, under the instructions, included compensation for the adverse effect the 2.58 acre easement taken by the commission for borrow pit purposes had on the fair market value of the remainder of that tract. We are not disposed to labor the interesting arguments advanced by appellant, which no doubt were made to the jury, with regard to its theory respecting the import to be given the evidence on this subject. It suffices to say we have carefully reviewed all evidence relating thereto and, while it must be conceded it was highly conflicting, find testimony on the part of several witnesses which would have warranted the jury in finding the injury to and depreciation of the land remaining in each of such tracts was far greater than the amounts allowed therefor. The trial court, which like the jury had the opportunity of observing the witnesses and judging the reasonableness of the amounts found as damages to the land remaining in such tracts, approved those amounts as well as the general verdict in which they are correctly reflected. Under such circumstances we have little difficulty in concluding the amounts allowed as damages to the land remaining in the two tracts are not so excessive as to warrant a disturbance of the judgment. This, we may add, is so notwithstanding the fact the jury allowed more damages per acre for the land remaining in the south tract than it did for that remaining in the north tract. For all we know that difference may be accounted for by what the

jury concluded was the adverse effect the 2.58 acre easement taken by the commission for borrow pit purposes had on the fair market value of the remainder of such tract.

Other contentions advanced by appellant in support of its position have been considered but are' not regarded as important enough to require express treatment in this opinion or sufficiently persuasive to change our views as herein expressed.

The judgment is affirmed.