No. 43,203

W. EDGAR MOORE, *Appellant,* v. THE STATE HIGHWAY COMMISSION OF KANSAS, *Appellee.*

(383 P. 2d 549)

Opinion filed July 10, 1963.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Alfred B. Page, Ralph F. Glenn, M. D. Bartlow, George D. Wagstaff, Gary L. Rohrer, Allen F. Gerye* and *Jan W. Leuenberger,* all of Topeka, were with him on the briefs for the appellant.

*Jerry W. Hannah,* of Topeka, argued the cause, and *Charles N. Henson,* assistant attorney general, and *Mark L. Bennett, Jr.,* assistant attorney, State Highway Commission, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for a mandatory injunction filed by W. Edgar Moore, plaintiff (appellant), a landowner, against the State Highway Commission seeking to enjoin the commission from prohibiting him direct access to federal Interstate Highway 35 (previously relocated US-50) until such time as access rights of the landowner were acquired by the commission. The plaintiff landowner will hereinafter be referred to as plaintiff, and the defendant State Highway Commission as commission. The pertinent facts leading up to the present action follow.

Prior to 1949 the highway in question was designated as a controlled access highway to be built on a new location under joint agreement between the Federal Bureau of Public Roads and the Kansas State Highway Commission. In 1949 the commission, in a condemnation proceeding, took 9.1 acres off the west side of plaintiff's land, upon which no highway previously existed, for the relocation and construction of U. S. Highway 50, now Interstate Highway 35, as a controlled access highway, and all access to the new highway was restricted. Such land was taken in the condemnation proceedings to construct a four-lane, super highway with additional service road. No separation of the plaintiff's property was effected by the taking, nor were any existing entrances to or exits from his property or any routes on and over existing township or county roads impaired.

The original condemnation petition stated the landowner could have direct access to the mainly traveled portion of the highway with the reservation the landowner would be required to use the outer highway service road when the same was installed by the commission. The petition further provided no additional entrances or access facilities from property of abutting property owners to the mainly traveled portion of such interstate highway could be constructed without written permission of the commission, and that the commission reserved the right to require all abutting owners to use the outer access highway or service road as a means of reaching the mainly traveled portion of the interstate highway at points to be designated by the commission.

Appraisers were appointed in the condemnation proceedings, and as provided by law, notice was given to the landowners that the land condemned was for the purpose of constructing an inter-

state highway as a controlled access highway. Award was made to plaintiff by the appraisers, from which award plaintiff appealed to the district court where the case was tried and judgment entered on the verdict for the plaintiff from which no appeal was taken. The commission paid the amount of the judgment into court and the plaintiff received the amount paid on the judgment for his damages sustained.

In December 1957 this action was filed by the plaintiff against the commission for a mandatory injunction as hereinabove related. This present action reached this court on issues regarding the pleadings in *Moore v. State Highway Commission,* 188 Kan. 338, 362 P. 2d 646, which gives a portion of the history of this action. Issues were subsequently joined and the case proceeded to trial to the court. The petition for a mandatory injunction involved herein is based on the theory the plaintiff landowner had a common law right of direct access to the newly constructed highway where no highway previously existed at a point where plaintiff's land abutted the highway.

Shortly after the original condemnation in 1949 the commission constructed a two-lane, one-ribbon, concrete highway which became new US-50, now Interstate Highway 35. This ribbon was completed in 1952 and officially opened in April 1953. No service road had yet been constructed. Following the construction of this ribbon, plaintiff occasionally ran his tractor and combine on and off the highway from his property and occasionally drove his automobile directly onto the highway, but for the most part he used the previously existing original access to the outer highways which was not impaired by the construction of the new road. In 1957 the commission began construction of the second ribbon alongside and immediately west of the existing ribbon, and in May 1957, after a frontage road was constructed on the land already acquired by the commission in the condemnation proceedings, direct access was cut off and plaintiff was relegated to the use of the service road in obtaining access to the newly constructed Interstate 35.

The court, after reviewing the pleadings and evidence, concluded as a matter of law that there was only one taking of land and it included enough land for the highway and service road eventually constructed; that the commission, under the provisions of G. S. 1949, ch. 68, art. 4, had the power and authority to condemn land and build a new highway where no highway previously existed,

and to limit, control or prohibit access thereto; that no abutter's rights attached under such circumstances; and that no taking of access was necessary by condemnation. The trial court denied plaintiff's request for a mandatory injunction and entered judgment in favor of the commission for costs. From this order and judgment plaintiff appeals.

It is conceded the plaintiff had no right of access to the new highway prior to its construction because no highway, conventional or otherwise, previously existed. G. S. 1949, ch. 68, art. 4, gave the highway commission broad authority to condemn land, construct highways and to cooperate with the federal-aid program in building highways. Therefore, the highway commission did have authority to construct a controlled access highway where no highway previously existed.

The over-all determinative question presented on this appeal was laid to rest in *Riddle v. State Highway Commission,* 184 Kan. 603, 339 P. 2d 301. In that case a new nonaccess highway was constructed through Riddle's farm where no highway previously existed and where the conventional highway used by Riddle was not destroyed. It is conceded by all that since statehood this court has consistently held that an abutting property owner has special private rights in *existing highways,* the most important of which is the right of access to and from the highway, which may not be taken from him by the public without just compensation. (*Riddle v. State Highway Commission,* supra.) However, such right is subject to reasonable regulation of the commission with respect to egress and ingress. (*Simmons v. State Highway Commission,* 178 Kan. 26, 283 P. 2d 392; *Riddle v. State Highway Commission,* supra.) We stated in the *Riddle* case at page 610 that where a new controlled access highway is established by the commission through property where no highway previously existed, there is no *taking* of a right of access since such right of access never in fact existed. See *Schnider v. State of California,* 38 C 2d 439, 241 P. 2d 1, 43 A. L. R. 2d 1068; *State ex rel. State Highway Comm. v. Clevenger,* 365 Mo. 970, 291 S. W. 2d 57; *State Highway Com. v. Burk et al.,* 200 Or. 211, 265 P. 2d 783; *Carazalla v. State,* 269 Wis. 593, 608a, 70 N. W. 2d 208; *State v. Calkins,* 50 Wn. 2d 716, 719, 314 P. 2d 449. See, also, articles entitled: *The Limited Access Highway,* 27 Wash. L. Rev. 111; 13 Mo. L. Rev. 29; *Freeways,* 3 Stanford L. Rev. 298; Institute on Eminent Domain, Southwestern Legal Foundation, Dallas, Texas (1962) p. 46.

Again in the *Riddle* case we stated:

"The legislature has plenary power over highways and it is well settled that their use may be limited, controlled and regulated in the exercise of the police power whenever necessary to promote the safety and general welfare of the people (citing cases). Thus, the regulation of traffic under the police power includes such things as prohibiting left turns, prescribing one-way traffic, prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways (case cited)." (p. 611.)

The commission exercised the police power under the statute (G. S. 1949, ch. 68, art. 4) when it determined the highway in question should be relocated and established as a controlled access facility, limiting abutters access thereto, and notice of such fact was set forth in detail in the petition for condemnation for the information of the landowners and the appraisers in assessing the damages to the property.

Further on page 611 in the *Riddle* case we stated:

"The authorities universally hold there are two methods by which an abutter's right of access may be curtailed or prohibited—the police power and the power of eminent domain (citing cases). Under the power of eminent domain the sovereign may take or damage private property for a public purpose upon payment of just compensation (citing cases). On the other hand, the police power is the power which the state inherently has to restrict the use of property without paying compensation by valid regulations intending to promote public health, safety, morals and general welfare (citing cases)."

It seems well settled that where a new highway is established by the commission as a controlled access facility through land where no highway previously existed, and the right of access is restricted by exercise of the police power, the abutting landowner is not entitled to compensation for the restriction of that right nor is he entitled to enjoin the commission from restricting his access thereto. In the instant case the plaintiff had been deprived of nothing which he ever enjoyed or to which he had a title or right except the 9.1 acres of farm land, and for that he was properly compensated in the original condemnation action. Plaintiff now and at all times has the same right of egress and ingress to his property as he had prior to the condemnation proceedings, and, in addition thereto, he has been given limited access to a super highway. It follows that the judgment of the trial court denying plaintiff's application for a mandatory injunction is affirmed.

ROBB, J., dissents from paragraphs 1, 3 and 4 of the syllabus and the corresponding portions of the opinion.

SCHROEDER, J., concurring: I concur in the result of the decision herein for the reasons hereafter assigned.

When the facts in *Riddle v. State Highway Commission,* 184 Kan. 603, 339 P. 2d 301, are taken into consideration, it is impossible for me to breathe life into it by recognizing it as an authority. The opinion there written for the court does not represent the opinion of a majority of the members of the court. The *Riddle* case was tried to the court on the basis of a condemnation action which recited in the petition that *rights of access were being taken by condemnation* pursuant to G. S. 1957 Supp., 68-1901 through 68-1906, and G. S. 1957 Supp., 68-413.

In the instant case the condemnation petition was filed prior to Chapter 68, Article 19 of the Laws of 1953. (68-1901 through 68-1906, *supra.*) The petition itself was artfully drawn on behalf of the State Highway Commission and could not be construed to say that the State Highway Commission was attempting to acquire rights of access by eminent domain, but that it was establishing the new highway as a controlled access facility, reciting in detail the manner in which the new highway would be constructed and the access curtailed, in the exercise of the state police power.

These facts were all set forth in the condemnation petition and fully informed the appraisers, and the jury on appeal, of the exact nature of the condemnation proceedings and of the use to which the premises would be put.

It must be conceded the landowner in the instant case did not have access to a highway which never existed. On the facts, the landowner's routes of travel from his premises over existing township and county roads and existing state highways were not curtailed in any way by construction of the new controlled access highway. Thus, the issue here presented is very narrowly limited by the facts.

Under G. S. 1961 Supp., 68-413 (enacted in 1951), the State Highway Commission in the acquisition of a right of way for state highway purposes by condemnation is limited, except in certain circumstances, to an easement. Conceivably, the landowner has a limited right of access to such property rights in the condemned land as are not taken from him—to the oil and gas, for example.

The basis of the landowner's complaint herein is the right of access by motor vehicles from his remaining tract of land *to the new highway facility.* He assumes that rights of access attached after the condemnation. By this injunction action the landowner ulti-

mately seeks to recover for the loss of the enhanced value to his remaining tract by reason of the condemnation designed to establish the new highway facility, where none previously existed, after having recovered full damages in the condemnation proceedings which fully informed him and all concerned prior to the taking that no rights of access to such highway would ever attach by reason of the condemnation. This he cannot do. He can only recover the value of the land taken based on its most advantageous use on the date of the taking, and damages to the remaining tract based upon the fair market value of the remaining tract immediately before the taking diminished by the fair market value of such tract immediately after the taking.

Theoretically, this means the fair market value for which the remaining tract of land could be sold immediately prior to the taking, absent knowledge on the part of the purchaser that there was a condemnation pending and absent knowledge of the use to which the property sought in condemnation may be put, diminished by the fair market value at which the property could be sold immediately after the taking, with full knowledge of the condemnation and the use to which the property condemned would be put.

If the landowner has lost any rights for which recovery is sought by this action, the value of such rights is at best nominal. In my opinion it is better that the law be settled on the narrow issue here confronting the court, than to foster actions for injunctions involving only nominal damages.