No. 44,137

R. E. Ray and Sadie Ray, his wife, *Appellants*, v. State Highway Commission of Kansas, *Appellee*.

(410 P. 2d 278)

Opinion filed January 22, 1966.

*Charles W. Harris,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Orval J. Kaufman, J. Ruse McCarthy, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew, Paul M. Buchanan* and *Charles R. Moberly,* all of Wichita, were with him on the brief for the appellants.

*Charles N. Henson,* Assistant Attorney General, argued the cause, and *David H. Fisher, Donald Patterson, C. K. Saylor, Jack L. Summers* and *Edwin D. Smith,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action by landowners to recover damages on an implied contract for the value of property rights alleged to have been appropriated by the State Highway Commission

without condemnation and without the payment of just compensation. The landowners allege the State Highway Commission has unlawfully taken their right of direct access to U. S. Highway No. 54. Upon the pleadings and admissions of the parties the trial court entered summary judgment for the State Highway Commission on the ground there was no compensable taking of the landowners' right of access. The landowners have duly perfected an appeal.

The only question is whether under the facts of this case there was a compensable taking of the landowners' rights of access to U. S. Highway No. 54.

It is the position of the State Highway Commission (hereafter referred to as the Commission) that upon the pleadings and admitted facts (secured by the Commission pursuant to K. S. A. 60-236) concerning which there is no dispute, the trial court properly sustained the motion for summary judgment as a matter of law.

The facts upon which the issue herein is to be determined are as follows:

The appellants, husband and wife, now own and at all times material to this action have owned real property on the north side of U. S. Highway No. 54 west of the city of Wichita, but in the urban area. The land was platted but is undeveloped commercial property. In the year 1952 the Commission condemned in the name of the State of Kansas an easement for a highway right of way over a portion of the appellants' property, the description of which has been admitted. (Abutters' rights of access were not condemned.)

In 1953 the Commission constructed a divided concrete four-lane highway, with separated eastbound and westbound traffic lanes, which was designated as U. S. Highway No. 54, a part of the state highway system. This highway abutted the entire south boundary of the appellants' land, and was constructed wholly within the easement previously condemned.

In the year 1959 the Commission constructed as a part of U. S. Highway No. 54, and the state highway system, a frontage road at a location north of the westbound traffic lanes of U. S. Highway No. 54 adjacent to the appellants' property.

No portion of the aforesaid frontage road was situated on the appellants' property. It was located entirely within the easement condemned for highway purposes in 1952.

At all times since the construction of the aforesaid frontage road,

the appellants have had and now have access to the frontage road, at all points where the north edge of this frontage road is adjacent to the appellants' property.

At all times material herein and subsequent to the construction of the frontage road, the appellants have had and now have access to the westbound traffic lanes only at points of connection between the frontage road and the westbound traffic lanes constructed in 1953.

It is undisputed the points of connection between the frontage road serving the appellants' property and the westbound traffic lanes are 1,067.44 feet apart. One is located 155.56 feet east of the east boundary of the appellants' property, and the other is located 714 feet west of the west boundary of the appellants' property. The appellants' property fronts the highway in question for a distance of 197.88 feet.

The Commission constructed the aforesaid frontage road for the purpose of making U. S. Highway No. 54 safer, less dangerous and for the welfare of the people, following a study and recommendation by its safety department.

As heretofore stated, the simple issue to be determined is whether upon the foregoing facts there was a compensable "taking" of the appellants' rights of access to the public highway. This is a question of law to be determined by the court in the first instance. (*Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934.)

The Commission contends that such action is a reasonable exercise of the police power in regulating traffic flow upon the main traveled portion of the highway.

It has been held if the State Highway Commission "takes" property for its lawful purpose without resort to condemnation or other proceeding, and a person deprived of property rights is not compensated, the injured party may bring an action against the Commission for full compensation in the form of an action on implied contract. (*State Highway Comm. v. Puskarich,* 148 Kan. 388, 83 P. 2d 132; *Atchison v. State Highway Comm.,* 161 Kan. 661, 171 P. 2d 287; and *Dugger v. State Highway Commission,* 185 Kan. 317, 342 P. 2d 186.)

It has also been held that access to and from an existing public highway is one of the incidents of ownership of land abutting thereon, sometimes called a common law right of access, which may not be taken from the owner by the public without just com-

pensation, when the landowner has been deprived of a legally protected right of access. Where the Commission exercises its power to take a legally protected right of access by condemnation or otherwise, the affected landowner has a right to compensation for the value of the property right taken. While the Commission concedes the foregoing law, it contends the cases so holding do not decide this case.

It is argued the power to regulate within the police power of the state gives the Commission the power to act in the public interest without incurring liability for compensation, even though property rights of citizens may be affected or even destroyed. (Citing, *Smith v. State Highway Commission,* 185 Kan. 445, 346 P. 2d 259, and cases cited therein.)

It must be recognized that these two types of power which the Commission exercises are mutually exclusive polestars with different legal consequences. The use of one incurs liability for compensation, but the other does not. An act by the Commission must be classified as an exercise of one type of power or the other. It cannot be both.

In the instant case the acts of the Commission, as revealed by the uncontroverted facts in the record, must therefore be held to be within the orbit of the power of eminent domain, or within the orbit of the police power to protect and safeguard the public welfare by regulating traffic on the highways. That is the issue presented by this appeal.

A similar question was brought into focus in *Smith v. State Highway Commission,* supra, as follows:

"*Subject to constitutional limitations,* the state has absolute control over the streets and highways within its borders. (*State v. Atkin,* 64 Kan. 174, 67 Pac. 519, 97 Am. S. R. 343, affirmed *Atkin v. Kansas,* 191 U. S. 207, 24 S. Ct. 124, 48 L. Ed. 148.) Such power of supervision and control may be exercised directly by the legislature, or it may be delegated to a subordinate governmental agency.

"The basic problem in every case involving impairment of the right of access is to reconcile the conflicting interests—i. e., private v. public rights. The police power is the power of government to act in furtherance of the public good, either through legislation or by the exercise of any other legitimate means, in the promotion of the public health, safety, morals and general welfare, *without incurring liability* for the resulting injury to private individuals. (*Mugler v. Kansas,* 123 U. S. 623, 8 S. Ct. 273, L. Ed. 205 and *Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80, 37 L. R. A. [n. s.] 877.) Eminent domain, on the other hand, is the power of the sovereign to take or damage private property

for a public purpose *on payment of just compensation.* (*Highbarger v. Milford,* supra [71 Kan. 331, 80 Pac. 633]; and *Simmons v. State Highway Commission,* supra [178 Kan. 26, 283 P. 2d 392].)

"Since there is no doubt that the right of access, like any other property can be taken for public purpose under eminent domain upon payment of just compensation, the interesting question is how far the public can proceed under the police power. Determination of whether damages are compensable under eminent domain or noncompensable under the police power depends on the relative importance of the interests affected. The court must weigh the relative interests of the public and that of the individual, so as to arrive at a just balance in order that government will not be unduly restricted in the proper exercise of its functions for the public good, while at the same time giving due effect to the policy in the eminent domain clause of insuring the individual against an *unreasonable loss* occasioned by the exercise of governmental power.

"It is well settled the limitation and regulation of *highway traffic* comes under the police power, and it makes no difference how or where any part of the traffic gained access to the road. The regulation of traffic without liability for the payment of compensation includes, among other things, prohibiting left turns, prescribing one-way traffic, prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways.

"Where does the police power end and the power of eminent domain begin? Some courts have attempted to generalize by declaring that the police power ends when the injury to the property owner in not being paid for his property is greater than the injury to the public in having to pay for the property. (See, The Limited-Access Highway, 27 Wash. L. Rev., pp. 111-129; and Freeways and the Rights of Abutting Owners, 3 Stanford L. Rev., pp. 298-311.)" (pp. 453, 454.)

In *Smith* the court held that compensation for taking access rights must be paid because the state there condemned the abutting landowners' rights of access in its eminent domain proceeding. On the facts in that case, there was no complaint by the landowners concerning that portion of their property abutting the highway, where the State Highway Commission provided them with access to the highway via a frontage road. The issue concerned the taking by condemnation of 1410 feet of the abutters' rights of access which fronted existing U. S. Highway No. 36 where no frontage road was planned or provided.

On the facts the issue here presented was not decided in *Smith v. State Highway Commission,* supra.

The proposition of law here presented was given careful consideration by the court in *Brock v. State Highway Commission,* supra. There the position which this court had previously taken in *Franks v. State Highway Commission,* 182 Kan. 131, 319 P. 2d 535, and in

*Atkinson v. State Highway Commission,* 184 Kan. 658, 339 P. 2d 334, was reconsidered, and these decisions were overruled. In *Brock* the court said:

"Without entering into an extended discussion as to what does or does not constitute undue interference with access rights on a conventional or land-service highway we are forced to conclude that the doctrine granting a right of access to abutting landowners as developed for conventional or land-service highways does not have the same application to controlled access highways.

. . . . . . . . . . . . . .

"The appellants vigorously contend that the controlled access facilities statute (K. S. A. 68-1901, *et seq.*) is a mandatory provision requiring condemnation and payment of damages when access rights are restricted. We do not agree with this construction. The statute in no way attempted to restrict the state's existing right to conrol access under the police power. The act was no doubt intended to give the State Highway Commission authority by condemnation to take the right of access in its entirety. This could not be done under the police power. An owner of land abutting a highway could not be placed in a *cul-de-sac* under the case made law. This was the right that was extended by the controlled access facilities statute. Perhaps the chief design of the statute was to permit the State Highway Commission to meet the standards of the federal laws. It was more in the form of an enabling statute to meet the requirements of the federal Interstate and Defense Highway System. (23 U. S. C. A. § 101, *et seq.*) The standard adopted for the Interstate and Defense Highway System required that states be able to acquire access rights abutting thereon.

. . . . . . . . . . . . . .

"We adhere to the rule that the owners of abutting lands have a right of access to the public road system *but it does not follow that they have a right of direct ingress and egress to and from a controlled access thoroughfare. The right of access,* if it can be determined to be a right under such circumstances, *is the right to reasonable, but not unlimited, access to and from the abutting lands.*

"Although an abutting landowner has a right to use a highway he cannot be heard to say that he has been deprived of his right or compensably damaged because he does not have direct access to a certain highway where public judgment dictates that access to and from the highway should be controlled and is subject to control under the police power of the state." (pp. 369, 370.) (Emphasis added.)

The substance of the holding in *Brock* is that the right of access of an abutting property owner upon a public street or highway is merely a right to reasonable, but not unlimited, access to and from the abutting property. As applied to controlled access facilities, where a frontage road is provided to which the abutting owners of property have direct access, and they have *reasonable access* from the abutting property via the frontage road to the through-traffic lanes of the controlled access highway, the abutters' rights

of access have not been taken or appropriated by the State Highway Commission, but merely subjected to regulation under the police power of the state, and their damages, if any, are non-compensable.

Where property owners are afforded complete ingress and egress to a frontage road upon which their property abuts, and they have *reasonable access* via the frontage road to the main traveled lanes of a controlled access highway, any inconvenience suffered by them is merely non-compensable circuity of travel. Under these circumstances, any decline that has occurred in the value of their property which is the result of a diversion of traffic is non-compensable. An abutting owner of property has no right to the continuation of a flow of traffic in front of his property.

In *Brock* a frontage road, which was a part of the highway sysstem, provided the owners of land with access to the through-traffic lanes at points of connection, only 575 feet apart. This was held as a matter of law to be a reasonable regulation of traffic within the police power of the state, acting through the State Highway Commission, and access was not denied. There the landowners were granted access to the through-traffic lanes at the extremeties of their property fronting the controlled access facility, and the State Highway Commission had constructed cross-over openings for their special use and benefit. Such cross-over openings were only 575 feet apart and corresponded with the points of connection which the landowners had from the frontage road to the through-traffic lanes.

The question in the instant case therefore resolves into whether the points of connection between the frontage road serving the appellants' property and the westbound traffic lanes of U. S. Highway No. 54 provide the appellants with reasonable access from their abutting property to the through-traffic lanes of the controlled access facility. These points of connection are 1,067.44 feet apart. One using the westbound traffic lanes on this controlled access facility would be required to make an exit 155 feet east of the east boundary of the appellants' property onto the frontage road and thereby gain access to the appellants' property. In leaving the appellants' property one would be required to travel 714 feet west of the west boundary of the appellants' property on the frontage road and there enter upon the main traveled westbound traffic lanes.

Under these facts we hold as a matter of law the appellants have reasonable access from their abutting property to the through-

traffic lanes of U. S. Highway No. 54. They are afforded complete ingress and egress from their abutting property to the frontage road, and reasonable access from their property via the frontage road to the through-traffic lanes of the controlled access facility. It follows that the abutters' rights of access have not been taken or appropriated by the Commission, but merely subjected to regulation under the police power of the state, and their damages, if any, are non-compensable.

The regulation of cross-over traffic between the east and westbound lanes of through-traffic on a controlled access facility is within the police power of the state. (See, *Smith v. State Highway Commission,* supra.)

The judgment of the lower court is affirmed.

SCHROEDER, J., dissenting: I must respectfully dissent on the ground the court has completely reversed its previous construction of the controlled access facilities statute (K. S. A. 68-1901 to 68-1906, inclusive) announced in *Smith v. State Highway Commission,* 185 Kan. 445, 346 P. 2d 259. My reasons are fully set forth and may be found in my dissenting opinion in *Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934, at page 373.

FONTRON, J. concurring: I concur in the court's decision that under the instant facts the access accorded plaintiffs to the main lanes of the highway via the frontage road can be said, as a matter of law, to be reasonable. However, as pointed out in my concurring opinion in *Brock v. State Highway Commission,* 195 Kan. 361, 378, 404 P. 2d 934, it is my view that when reasonable minds might differ as to whether the limitation of access is reasonable, an issue of fact is presented which should be submitted to a jury.

FATZER, J., concurring: This case was heard on its merits at the June 1965 Session upon the facts admitted by the pleadings, and the admissions on file secured by defendant pursuant to K. S. A. 60-236. The only question presented is the legal effect of what in fact was done by the State Highway Commission in relation to plaintiffs' land. Those facts about which there is no dispute, and which control this case as a matter of law, are correctly stated in the court's opinion.

The plaintiffs' contention of denial of access to U. S. Highway 54 and for damages for a "taking" of their property right simmers

down to the claim they are entitled to direct access to the main traveled portion of the westbound traffic lane for the entire frontage of their property. They refer to the frontage or service road constructed by the commission in 1959 as a "barrier" to their right of access to the highway. No claim is made they do not have access to the frontage or service road adjacent to their property, or that circuity of travel to interchanges to the east and to the west of their property affording entrance to the main traveled westbound lane is unreasonable.

This case was decided by the district court several months prior to our decision in *Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934, and the district court held that the control of access to high-speed traffic lanes was within the police power of the state, properly exercised by the State Highway Commission regulating traffic for a higher degree of safety; that the construction of the frontage road as disclosed by the pleadings and admitted facts failed to show any compensable injury to the plaintiffs, and there being no genuine issue as to any material fact between the parties, the court entered summary judgment as a matter of law in favor of the commission.

In view of this court's decision in *Brock,* supra, holding that where an abutter is given unlimited access to a controlled-access highway by means of a frontage road, the reasonableness of commission action under the police power in requiring circuity of travel to reach other traffic lanes is a question of law reviewable by courts under existing facts and circumstances, this case was set for re-argument at the December 1965 Session. The parties stipulated to the distances to interchanges east and west of plaintiffs' property affording entrance to the main traveled westbound traffic lane, which are correctly set forth in the court's opinion. The case was reheard on the merits and the plaintiffs filed a supplemental brief.

The point at issue is whether the plaintiffs suffered compensable injury by a "taking" of their right of access to U. S. Highway 54. It is conceded that the commission acted pursuant to the provisions of our Controlled-Access Statute (K. S. A. 68-1901, *et seq.*) when it constructed the frontage or service road for the purpose of making the highway safer, less dangerous, and for the welfare of the traveling public, following a study and recommendation by the safety department of the commission. It is also conceded the commission did not condemn plaintiffs' right of access when it acquired the right of way for the highway in 1952.

Many basic legal questions arising out of the National System of Interstate and Defense Highways present the pressing problem of reconciling conflicting interests—that of private land use versus public highway use. Generally speaking, the backbone of this federal-state system is premised primarily upon the policy of access control. The two great powers of government involved—eminent domain and the police power—are antithetical; the line of demarcation between their valid exercise is not always well defined. (*Pumpelly v. Green Bay Company*, 80 U. S. 166, 20 L. Ed. 557.) Eminent domain is the right *to take* private property for public use without the owner's consent upon payment of just compensation. On the other hand, the police power is the power of the state *to restrict* the use of property without paying compensation by a valid regulation intending to promote the public safety, health, morals and general welfare.

Application of our Controlled-Access Statute to fact situations produce legal questions of great magnitude relating to the restriction of access of abutting owners, frontage or service roads, new highways where none previously existed, and control of land use in interchange areas. In all these areas, the traditional police power may properly be exercised under the statute.

In applying the police power to solve some of these problems, courts should ask and answer the following questions. What is the police power? How is it exercised, and what are its limitations? What is an abutter's right of access, and may it be restricted by the police power? Can the two rights, the private right of the abutter and the right of the state to promote public safety, be harmonized? As Mr. Justice Burch stated in *State Highway Comm. v. Panhandle Eastern P. L. Co.*, 139 Kan. 185, 189, 29 P. 2d 1104, cases dealing with eminent domain must be put to one side.

### THE POLICE POWER

The "police power," like the power of eminent domain, is an inherent power of the sovereignty and comes into being with the establishment of state government and continues as long as government endures. The term is not susceptible to definition with circumstantial precision and is subordinate to constitutional limitations. It is a governmental power of self protection and permits reasonable regulation of rights and property in particulars essential to the preservation of the community from injury. It rests upon the fundamental principle that every owner holds his property

under the implied limitation that its use may be so regulated as to not be injurious to the safety, health, morals and general welfare of the community in which he lives. (*Panhandle Co. v. Highway Comm'n*, 294 U. S. 613, 79 L. Ed. 1090, 55 S. Ct. 563.) The power extends to the entire property and business within a state's jurisdiction. Both are subject to it in proper cases. (*Transportation Co. v. Chicago*, 99 U. S. 635, 642, 25 L. Ed. 336; *Hadacheck v. Los Angeles*, 239 U. S. 394, 60 L. Ed. 348, 36 S. Ct. 143, Anno. Cas. 1917B, 927; *Mugler v. Kansas*, 123 U. S. 623, 31 L. Ed. 205, 8 S. Ct. 273; *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80, 37 L. R. A. [ns1 877; *Martin v. Davis*, 187 Kan. 473, 484, 357 P. 2d 782, app. dis. 368 U. S. 25, 7 L. Ed. 2d 5, 82 S. Ct. 1.)

The landmark case of *Mugler versus Kansas* clearly outlines the distinction between eminent domain and the police power. While every regulation necessarily speaks as a prohibition (*Goldblatt v. Hempstead*, 369 U. S. 590, 8 L. Ed. 2d 130, 82 S. Ct. 987), and deprives the owner of some rights theretofore enjoyed and is in that sense an abridgment by the state of rights in property without compensation, a reasonable regulation imposed to protect public safety is not a "taking" in the constitutional sense (*Mugler v. Kansas*, supra), "because the public use is paramount and public safety is the desideratum." (*State Highway Comm. v. Panhandle Eastern P. L. Co.*, supra, p. 189.) The rule is stated: "Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or of private property affected with a public interest." (*Chicago, Burlington &c. R'D v. Chicago*, 166 U. S. 226, 254, 255, 41 L. Ed. 979, 991, 17 S. Ct. 581; *Denver & R. G. R. R. Co. v. Denver*, 250 U. S. 241, 63 L. Ed. 958, 39 S. Ct. 450; *Mugler v. Kansas*, supra.)

The property so restricted remains in the possession of the owner. The state does not appropriate it or make any use of it. It merely prevents the owner from making a use which interferes with the paramount right of the public safety previously ascertained by state action—in the instant case by the enactment of our Controlled-Access Statute and the design and construction of controlled-access U. S. Highway 54. If a regulation is otherwise a valid exercise of the state's police power, the fact that it deprives the property of its most beneficial use does not render it unconstitutional. (*Walls v. Midland Carbon Co.*, 254 U. S. 300, 65 L. Ed. 276, 41 S. Ct. 118;

*Reinman v. Little Rock*, 237 U. S. 171, 59 L. Ed. 900 35 S. Ct. 511; *Mugler v. Kansas,* supra, *Goldblatt v. Hempstead,* supra.) Nor is it of controlling significance that the use prohibited is a "use" upon the soil as opposed to a "use" of the soil itself. ( *U. S. v. Central Eureka Mining Co.,* 357 U. S. 155, 2 L. Ed. 2d 1228, 78 S. Ct. 1097.) Nor that the use prohibited is arguably not a common-law nuisance. ( *Reinman v. Little Rock,* supra.)

## LIMITATIONS OF POLICE POWER

Except for the familiar standard of "reasonableness," courts have generally refrained from declaring any specific area in which the police power may be invoked, but the classical statement of the rule in *Lawton v. Steele,* 152 U. S. 133, 38 L. Ed. 385, 14 S. Ct. 499 (1894), is still valid today, and I quote: ". . . To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public . . . require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. . . ." (p. 137.) It seems trite to mention that action by the commission in designing and constructing a controlled-access highway, or in constructing frontage or service roads for such a highway pursuant to the statute, is action by the state within the meaning of this rule. (*McCandliss Construction Co. v. Neosho County Comm'rs,* 132 Kan. 651, 653, 296 Pac. 720; *American Mut. Liability Ins. Co. v. State Highway Comm.,* 146 Kan. 239, 69 P. 2d 1091.) But state action in the form of regulation can be so onerous as to constitute a "taking" which constitutionally requires compensation. (*Penna. Coal Co. v. Mahon,* 260 U. S. 393, 67 L. Ed. 322, 43 S. Ct. 158, 28 A. L. R. 1321.) Hence, we come to the elusive question: Where does police power end and eminent domain begin? There is no precise answer to the question. Each case must be considered by courts on its own merits. If a line can be drawn between the exercise of these two powers, Mr. Justice Holmes, in *Penna. Coal Co. v. Mahon,* supra, had this to say:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. *So the*

*question depends upon the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power."* (p. 413.)

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . . *As we already have said, this is a question of degree—and therefore cannot be disposed of by general propositions. . . .*" (p. 415.) (Emphasis supplied.)

In the recent *Goldblatt* case, *Mugler versus Kansas* was quoted and reaffirmed, and it was said:

". . . There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant, see *Pennsylvania Coal Co. v. Mahon,* supra, it is by no means conclusive, see *Hadacheck v. Sebastain,* supra, where a diminution in value from $800,000 to $60,000 was upheld. . . ." (p. 594.)

See, also, *Erie R. R. Co. v. Public Util. Commrs,* 254 U. S. 394, 410, 65 L. Ed. 322, 333, 41 S. Ct. 169, where an expenditure of over $2,000,000 was required through the exercise of the police power to insure public safety.

## THE PUBLIC SAFETY

The supervision of public safety is a governmental power, continuing in its nature, to be exercised through the police power as the special exigencies of the moment may require, and the largest legislative discretion is allowed. We have held that the legislature has plenary power over highways and it is well settled that their use may be limited, controlled and regulated in the exercise of the police power whenever necessary to promote the safety and general welfare of the people. Hence, the regulation of traffic under the police power includes such things as prohibiting left turns, prescribing one-way traffic, prohibiting access or cross overs between separate traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways. (*State, ex rel., v. St. Louis-S. F. Rly. Co.,* 124 Kan. 433, 260 Pac. 980; *State, ex rel., v. State Commission of Revenue and Taxation,* 163 Kan. 240, 247, 181 P. 2d 532; *Riddle v. State Highway Commission,* 184 Kan. 603, 611, 339 P. 2d 301; *Moore v. State Highway Commission,* 191 Kan. 624, 383 P. 2d 549; *Jones v. Garrett,* 192 Kan. 109, 386 P. 2d 194; *Watson v. City of Topeka,* 194 Kan. 585, 589, 400 P. 2d 689.)

Our Controlled-Access Statute is, in the best sense, a police regulation deemed essential by the legislature for the protection of the lives and property of our citizens against the unrestrained exercise of any citizen of his own right. It was enacted to meet the needs of social and economic conditions brought about by twentieth century urbanization and the perfection and increased use of the motor vehicle. It calls for a necessary adjustment of two conflicting interests—that of the public using the highways, and that of the abutter and his right of access thereto. Generically, the safe use of the public highways represents the more important interest of the two. This statute contains broad grants of power and was intended to embrace all details for the same, convenient and efficient movement of traffic. Its purpose was to have highways designed and constructed in such a manner that their use would not be dangerous to the traveling public. Old highways were to be relocated and reconstructed, and new highways were to be located and constructed. These highways were to be free from abutter's access except at designated interchange areas or crossovers, and were designed primarily to serve the traveling public and only secondarily the land over which they pass. The general grant of power to deal effectively with an enterprise of this magnitude in the interests of public safety is paramount, and the statute is not to be interpreted in any narrow, technical or illiberal manner.

This statute forms the basis for a different approach to the solution of questions concerning access rights than courts have had in some of their opinions. Heretofore they have approached the questions largely on the basis of individual interest alone. Under this statute properly applied, courts must now approach them on the basis of the convenience and safety of the people of the state without losing sight of the limited or restricted use the individual may make or has the right to make to access to such highways. Broad statements found in some opinions that under the common law an abutter has the absolute right of unrestricted ingress and egress to and from streets and highways must be modified to harmonize with the declaration of this statute. The change is an appropriate one for the legislature to make. As Mr. Chief Justice Harvey wrote in *State, ex rel., v. Knapp,* 167 Kan. 546, 555, 207 P. 2d 440, "Individuals do not live alone in isolated areas where they, at their will, can assert all of their individual rights without regard to the effect upon others."

## The Right of Access

The property right of access appurtenant to property abutting a public highway is the right of access to and from the abutting property by means of the street or highway. (*Longnecker v. Railroad Co.*, 80 Kan. 413, 102 Pac. 492; *Riddle v. State Highway Commission*, supra; *Smith v. State Highway Commission*, 185 Kan. 445, 346 P. 2d 259; *Moore v. State Highway Commission*, supra.) The right has been given the status of property, which may not be "taken" from the owner without just compensation. It is justified upon the grounds of necessity and is such as is reasonably necessary for the enjoyment of the land, but the owner is not entitled, as against the public, to access to his land at all points between it and the highway. It is a judicially declared right, created and adopted by courts to conditions existing at the time of the judicial decisions. (See, *Muhlker v. Harlem Railroad*, 197 U. S. 544, 49 L. Ed. 872, 25 S. Ct. 522.) But conditions change, and the law follows apace.

But accepting the nature of the right of access as it is now recognized by most courts, its enjoyment, like all property rights, is subject to regulation by the state, where facts demonstrate its free and unrestricted exercise would be detrimental to public safety. The right of the abutter must bend to the right of the public to safe and efficient travel upon the public way. It is universally held that acts done in the proper exercise of governmental power and not directly encroaching upon private property, though these consequences may impair its use, do not constitute a "taking" within the meaning of the constitutional provisions, or entitle the owner to compensation from the state, or give him any cause of action. (*Transportation Co. v. Chicago*, supra; *Goldblatt v. Hempstead*, supra; *Riddle v. State Highway Commission*, supra; *Moore v. State Highway Commission*, supra; *Brock v. State Highway Commission*, supra; 29A C. J. S. Eminent Domain, § 111, pp. 450, 451.)

## Reconciling Conflicting Interests

How far the abutter's right of access must accommodate itself to the public need is the decisive question. Courts need not be reminded of the difficulty of stating a definite answer. They have placed the fulcrum at various points along the balance between the public need and the private right, but time does not permit a collection and citation of the numerous cases dealing with the subject. The presumption is in favor of the validity of the regulation and of administrative action under it, and the burden is upon the

abutting owner to show that it was not necessary for the protection of the public safety. (*Penna. Coal Co. v. Mahon,* supra; *Goldblatt v. Hempstead,* supra; *Erie R. R. Co. v. Public Util. Commrs.,* supra.)

No hard and fast rule can be stated, but courts must weigh the relative interests of the public and the individual and strike a just balance so that government will not be unduly restricted in its function for the public safety, while at the same time, give due effect to the policy of eminent domain to insure the individual against an *unreasonable* loss occasioned by the exercise of the police power. (*Erie R. R. Co. v. Public Util. Commrs,* supra; *Riddle v. State Highway Commission,* supra; *Smith v. State Highway Commission,* supra.) The question depends upon the particular facts of the case. Obviously, if there is a total blocking of access, the restriction would be unreasonable and the abutter entitled to compensation. (*K. N. & D. Rly. Co. v. Cuykendall,* 42 Kan. 234, 21 Pac. 1051; *Sample v. Jefferson County,* 108 Kan. 498, 196 Pac. 440.) Where, however, the restriction does not *substantially interfere* with the abutter's ingress and egress (*Iowa State Highway Comm. v. Smith,* 248 Iowa 869, 877, 82 N. W. 2d 755), or where "frontage" or "outer roadways" reasonably provide access (*Darnall, et al., v. State, et al.,* 79 S. D. 59, 108 N. W. 2d 201; *Nick v. State Highway Comm.,* 13 Wis. 2d 511, 109 N. W. 2d 71) the abutter is not entitled to compensation. While an abutter has the right of access to the public highway system, it does not follow that he has a direct-access right to the main traveled portion thereof; circuity of travel, so long as it is not unreasonable, is non-compensable. (*State v. Lavasek,* 73 N. M. 33, 385 P. 2d 361; *Sample v. Jefferson County,* supra; *Gantz v. Jefferson County Comm'rs,* 129 Kan. 66, 282 Pac. 265; *Brock v. State Highway Commission,* supra.) Likewise, loss of business occasioned by the diversion of traffic is non-compensable. (*Heller v. A. T. & S. F. Rld. Co.,* 28 Kan. 625.)

In applying the foregoing rules, it will be noted the frontage road was constructed upon the right of way of U. S. Highway 54, which was acquired by eminent domain. Where, then, is the point at which the plaintiffs' access rights are to be determined? In the nature of things there can only be one point along which an abutter can claim access rights and that is the boundary line of the right of way of the highway. So far as the palintiffs are concerned, everything outside or to the north of this line is private land including their own; and everything inside that line including the frontage

or service road, is a part of the highway. Once they have crossed the boundary line they are, legally speaking, either within the highway or outside the highway, depending upon whether they are moving to or from their land when they cross the boundary line. When they are within the limits of the highway after crossing the boundary line, they must share with every other user of the highway the restrictions of turning and moving from lane to lane on the highway. The restriction of crossovers between separated lanes of a public highway at designated points is within the police power of the state to regulate the flow of traffic upon the highway in the interest of public safety. It follows that when the plaintiffs as abutting owners are given access to the nearest lane of multilane U. S. Highway 54—the frontage or service road—and no claim is made that the circuity of travel to other traffic lanes is unreasonable, no property right has been "taken" which must be compensated by the state. Where property abutting a public highway with separated traffic lanes has unlimited access to the lane nearest the property constructed and maintained by the public authorities, whether called a frontage road or by some other name, access to and from the property by means of the highway is afforded and *the right of access is neither regulated nor taken.*

In view of the foregoing, and since the frontage road was constructed by the commission for the purpose of making U. S. highway 54 safer, less dangerous, and for the welfare of the traveling public, following a study and recommendation by the safety department of the commission, neither the controlled-access statute nor the design and construction of multilane U. S. Highway 54, or under the record in this case, the construction of the frontage road to which the plaintiffs have direct access, constituted a "taking" of their property within the meaning of statutory and constitutional provisions, or entitle them to compensation from the state, or give them any cause of action for damages.

As previously indicated, the parties stipulated at reargument to distances to interchanges east and west of plaintiffs' property. It is 155.56 feet from the interchange east of their property to their east boundary line, and it is 714 feet from their west boundary line to the interchange west of their property. It is obvious the plaintiffs are not denied ingress and egress to and from their property, and they may easily reach the main traveled westbound lane of the highway by passing over the frontage or service road.

Where, as here, adequate provision is made for travel on frontage or service roads to interchange areas at not inconvenient distances, it cannot be said that the exercise of the police power through application of the statute (K. S. A. 68-1901, *et seq.*) imposes an unreasonable circuity of travel so as to authorize an award of damages to the abutting owner for a "taking" of his property. Moreover, courts may not substitute their judicial judgment for the judgment of the commission exercised as here, under a valid legislative act; rather, courts are obliged to find facts which demonstrate that the commission's conduct departs from the realm of the reasonableness and passes over into the realm of the unreasonableness—that it is arbitrary, capricious and subversive of private rights as to indicate an abuse rather than a *bona fide* exercise of power. (*City of Emporia v. Railway Co.*, 88 Kan. 611, 614, 129 Pac. 161; *Spurgeon v. Board of Commissioners*, 181 Kan. 1008, 1014, 317 P. 2d 798, and cases cited.)

It has long been the rule in this state that the question whether an ordinance, regulation or statute, or acts of an administrative board or commission in pursuance thereof, is void because "unreasonable" is a question of law to be determined only by courts. In *City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095, it was said:

"Whether or not an ordinance is void because unreasonable is a question of law (*Lebanon v. Zanditon*, 75 Kan. 273, 89 Pac. 10), and in determining the question of reasonableness ' "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the [legislature or a city council] has transcended the limits of its authority" ' (*City of Lyons v. Cooper*, 39 Kan. 324, 328, 18 Pac. 296)." (l. c. 723.)

In *Lebanon v. Zanditon*, 75 Kan. 273, 89 Pac. 10, it was said:

"It is also contended that the court erred in refusing to submit to the jury for their consideration the evidence offered by the appellants tending to show that the ordinance was unjust and unreasonable. We cannot agree with the appellants in this contention. The facts being undisputed, the question whether an ordinance is void for any reason is a question of law and must be determined by the court. (1 Dillon's Mun. Corp. § 327, and cases there cited.)" (l. c. 275.)

In *Miller v. State Board of Embalming*, 110 Kan. 135, 202 Pac. 619, it was said:

"Not only must the courts meet and determine the question of the reasonableness of an official, administrative body, when such question is squarely

presented, but it not infrequently has to determine the reasonableness of more formal enactments, such as city ordinances (*City of Emporia v. Railway Co.*, 94 Kan. 718, 722, 723, 147 Pac. 1095), and state laws (*The State v. Wilson*, 101 Kan. 789, 796, 799, 800, 168 Pac. 679)." (l. c. 141.)

In *City of Marysville v. Cities Service Oil Co.*, 133 Kan. 692, 3 P. 2d 1060, it was said:

" 'The right to a judicial determination of the question of reasonableness, however, is the matter of essence and substance, and not the method of procedure; and so long as the defendant cannot be made to suffer until a competent court has passed upon the justice of the legislative rates the guaranties of the federal constitution are not infringed.' " (l. c. 701.)

See, also, *Gilbert v. Mathews*, 186 Kan. 672, 352 P. 2d 58.

It, therefore, follows that the question of the reasonableness of circuity of travel to reach interchanges of a multilane highway by means of frontage or service roads constructed by the commission as a part of the state highway system pursuant to the statute, affording an abutting owner access to other traffic lanes, is subject to review only by courts, as a matter of law. This necessarily follows since the point here involved is where regulation ends and a "taking" begins—that is, whether the police power has been properly invoked in restricting the use of the property, and if it has not, to require application of the law of eminent domain. This is a question of law for consideration of courts, and not a question of fact for consideration of juries.

I must disagree with Mr. Justice Schroeder's statement in his dissenting opinion that this court has done an about-face in construing K. S. A. 68-1903. Under no circumstances was that statute intended by the legislature to negate the authority of the commission to *restrict* the use of property by the exercise of the police power under Secs. 68-1901, 68-1902 and 68-1904, and K. S. A. Ch. 68, Art. 4. (*Moore v. State Highway Commission*, supra; *Riddle v. State Highway Commission*, supra.) As previously indicated, in considering rights of access of abutting owners to controlled-access highways whose rights have been restricted by the commission's exercise of police power, cases dealing with eminent domain, such as *Smith v. State Highway Commission*, supra, must be put to one side, unless courts determine that what was done under the circumstances was a "taking" of the rights of the abutter which requires compensation by the state. (K. S. A. 68-1903.)

This court is eminently correct in affirming the judgment of the court below.